PETITION FOR REHEARING BY
J. J. CRITTENDEN
The counsel of the plaintiffs in error, begs leave to recal the attention of the court for a moment, to the consideration of this case.
The doctrines which it involves, embracer, a delicate and important branch of equitable jurisdiction.
Latham and Roberts as sureties for Morehead, together with him, executed their joint promissory note to Norton and Williams, for $2,500, negotiable and payable at the Russellsville branch bank, nine momlis after date, and dated the 18th of August 18S 8. On the day of May, 1819, the note was protested for- non-payment. On the, day of the following July, according to agreement between the plaintiffs in error, and Morchead, the latter made them a partial payment on said note. and for the balance remaining due, he executed his two notes, one to Norton for S623 50, the other to Williams for $789 43; both dated 27th July. 1819, and payable, sixty days after date, at the branch *495 bank aforesaid. Norton retained the original note, and made at the time, an indorsement upon it, acknowledging the receipt of the two smaller and that “when paid.” they were to be in full of the original note: and Norton was to wait and giro time upon tlm original note, until the other notes became due. Of this arrangement Latham and Roberts were ignorant.
Morehead failed to pay the notes for $628 50, and for $789 43, and Norton, as surviving partner &c. brought suit and recovered judgment at law? against all the obligors in the first mentioned note. And upon a bill for relief against that judgment, by the sureties, Latham and Roberts, the inferior court decreed a perpetual injunction, and this court has affirmend that decree, upon the ground that the sureties were discharged, by the arrangement made as aforesaid between Morehead, and Norton and Williams, without the privity or consent of the sureties
The law, and the reason of the. law, on this subject, are clearly laid down by chancellor Kent, in the case of King vs. Baldwin, 2 Johns. chy. rep. 559 and 560. He there says that, “mere delay in calling on the principal, will not discharge the. surety- provided that delay he unaccompanied with any settled or binding contract for that purpose.” He further states that, “on paying the debt, the surety is entitled to the creditors place, by substitution; and if the creditor by agreement with the principal debtor, without the surety’s consent, has disabled himself from suing, when he would otherwise have been entitled to sue, under the original contract or has deprived the surety, on his paying the debt, from having immediate recourse to his principal, the contract is varied to his prejudice, and he is consequently discharged. This is the true principle to be extracted from the cases.”
The case of Fulton vs. Matthews and Wedge, 15 Johns, rep. 433, is to the same effect. It is there decided that the surety is not discharged by the creditors giving time to the principal debtor, without the privity or consent of the surety, unless *496 the creditor has, by some contract or agreement with the principal debtor, precluded himself from suing him.
From these eases it is evident, neither mere delay. nor giving time to the principal debtor, will discharge the surety, unless that time be given in consequence of some “settled or binding contrast for the purpose;” a contract, which would preclude the creditor from suing for the. time given, and which would in like manner preclude the surety from suing upon his paving the debt of his principal. Such a contract must undoubtedly be founded upon same consideration. It must be a contract valid in law, and not a mere nudum pactum. A mere nudum pactum, or gratuitous promise to give time, creates neither right nor obligation, nor would it preclude the premisor, a single instant, from suing.
In Chitty on bills, (American edition.) page 379 and note (c) it is laid down, that “even an express agreement not to sue, (an acceptor,) but without: sufficient consideration, and without taking any new security, being nudum pactum, will not discharge the other parties.”
The new security here alluded to, must he either in lieu and satisfaction of the original security, or it must be some cumulative security, and which of course, would form a sufficient consideration for art agreement to give time, it is only in the one or other of these senses, that the taking a new security tan have any sensible or intelligible application to the subject of discussion. That the mere unconnected fact of a creditor’s obtaining additional security, can not discharge sureties previously bound to him, but that it is a benefit to them, is a proposition too plain for controversy. To cite authorities in support of it, would be mere parade.
If these doctrines be correct, it is respectfully Contended, that the application of them to the present case, ought to have produced a reversal, instead of an affirmance of the decree of the circuit court.
If Norton and Williams did promise Morehead to give time &c. it was a promise without consider *497 ation. If can not he argued that the two smaller notes given by Morehead, were any consideration. Morehead was already bound by his note with sureties for the whole amount, and it was due; and bow his engagement to pay at a future time, what he then owed, can form any valuable consideration to support an undertaking of Norton and Williams, is more than I can comprehend.
To discharge the surety, it is not necessary that the new notes given by the principal, should be accepted in satisfaction of the original, or that there should be any new consideration or security.
It is not necessary the new arrangement with the surety be such as to bar an action at law on the original note.
*497 The receipt given by Norton, shews that it was not his intention, or the understanding of the parties, that the two smaller notes were given in lieu or satisfaction of the first, that ho retained; and his agreement to give time upon it, if without sufficient consideration, did not bind him; did not "disable” him from suing on the original note at any time; nor would it have precluded the sureties from suing, had they paid the debt; and it ought not therefore to discharge the sureties, or prevent Norton from enforcing against them, his judgment at law. All which is respectfully submitted to the court, and if deemed worthy of further consideration, a reargument of the case is solicited.
Opinion of the court by
Chief Justice Bibb,
overruling the petition.
July 6th.
The court have examined Use petition for a rehearing, and find nothing to change the decision rendered. The petition has taken detached sentences in the opinion delivered' in the cases of King vs. Baldwin, 2 John. ch. ca. 560, and Fulton vs. Matthews and Wedger, 15 John. 433, and from Chitty, and thence argues, that the agreement between the creditor and the principal, which is to discharge, by its effect and consequence, the surety, must he either accepted in satisfaction of the original contract by which the surety is bound, or that some cumulative security upon a new and sufficient consideration, must he taken from the principal, whereby the old contract is so far done away, that the creditor has precluded himself from suit upon it.
This is not the correct understanding of the cases of King vs. Baldwin, and of Fulton vs. Matthews and Wedger, nor of Mr Chitty. The cases cited show *498 that the agreement with the principal without the assent of the surety, in order to discharge the surety, must not necessarily be such as could be pleaded at law, in bar of the remedy on the original contract, as amounting to accord and satisfaction, extinguishment or release. If such was the meaning of the rule, then the surety would have no need to come into a Court of equity; unless the discovery of the new agreement was not made until it was too late to use it at law, as a protection and bar to the proceedings there.
Case of a surety in a bond ,with condition to pay the instalment, discharged in equity by the creditor taking promissory notes for the instalments, allowing time.
The cases rited by chancellor Kent in his opinion delivered in King vs. Baldwin, lays down the rule have done; the cases cited by him, are in direct hostility to the position assumed in the petition In the case of Rees vs. Barrington, Rees the surety was bound in a joint and several bond with his, principals, Daniel and Richard Blackford, to Robert Pope Blackford, conditioned to pay several sums on the 31st Dec and on the 31st Dec. 1790. Upon the 27th September, 1790, the instalments unpaid, the creditor, took from Daniel and Richard Blackford the principals, by arrangement. (without the assent of the surety Rees to stand bound for this new agreement.) for the first instalment due on the bond, promissory Holes of said principals, payable on the 21st of April, July and October 179 , and 2ist of January and April, 792¿ and for the second instalment, due. on the, bond, took three other promissory notes from said Daniel and Richard, the principals, payable on the 21st of July, and October 1792, and 2¡st January 1793. Daniel and Richard, the principals, paid the first three of the set of promissory notes, and about tnc 20th Oct. 1792, by a new arrangement, ail the remaining notes were exchanged for others payable on the 25th of May. June, September and December 1793. D. and R. Blackford became bankrupt, and after their bankruptcy, Rees the surety was sued upon the bond. This arrangement with the principals, by which they got longer time, upon their simple promissory notes, executed for the sums due on the bond, was decreed in equity as a disc *499 harge of Rees the surety. And this is one of the cases quoted and relied oh by chancellor Kent, in King vs. Baldwin.
Arrangement by the holder of a bill of exchange with the person first bound, discharges all the other parties not concuring.
If the taking of promissory notes from the principal, for the money due by bond, and giving longer day in those notes for payment, than that expressed in the bond, did discharge the surety, although the bond was retained and afterwards put insuit against him, there is no reason for saying that, the promissory notes taken by Morton and Williams, upon an arrangement to give the principal farther day for payment, than that expressed in the promissory note by which the sureties Roberts and Latham were bound, shall not discharge the sureties in this case.
The like principle has been applied to the holder of a bill of exchange. He cannot give time to, or discharge the drawer or acceptor, and afterwards proceed against the indorser; the rule is so stated both as to bills, notes and bonds, by Chitty, 371 to 379 The holder has the sole dominion of the bill, and may make what arrangements he will, with any of the parties; but he does it at bis peril; for if lie thereby alter the situation of any other party to the bill, to the prejudice of that person, he cart not afterwards proceed against him. He can not give time to or discharge a previous party in the order of responsibility amongst the parties, and after proceed against a subsequent party who, in respect of his indemnity, stands as surety, having a right to look to. as a principal, the previous party so favoured. He says “ this is a rule of law, not confined to bills of exchange, for if the obligee of a bond with surety, without communication with the surety, takes notes from the principal and gives farther time, the surety is discharged.” For this rule as to bills, notes and bonds, he cites numerous decisions in England and in the United States.
The petition is overruled.